# EXHIBIT A



08/23/2019

Shipped Via: First Class

Owner Manager
Evermore Park
382 S Evermore Lane
Pleasant Grove, UT  84062

Dear Owner Manager:

**Do You Know How Music Licensing Affects Businesses And Organizations That Play Music?**
We've attempted to contact you to explain how BMI's service can be of help to you by providing the permission that must be obtained from copyright owners before music is played publicly. Determining who the songwriters are for each song that's played by a business or organization would be a staggering endeavor.  That's why BMI offers a solution.  A BMI Music License provides permission under U.S. and global copyright laws to use any of the more than 14 Million copyrighted musical works that BMI represents.

**How Do You Know That You Are Playing BMI Music?**
Approximately one out of every two songs played on radio is BMI-licensed music. The BMI repertoire has won numerous GRAMMYs, Country Music Association, and American Music Awards.  BMI writers represent the largest percentage of inductees into the Rock & Roll Hall of Fame, account for roughly one-half of all of the winners of the coveted Pulitzer Prize in the field of classical music, and have received the most Rhythm & Blues Foundation Pioneer Awards and Downbeat Jazz Poll Awards.

If you are playing music, please license online or sign and return the enclosed license as soon as possible. For more information, please visit us online at www.bmi.com/licensing or call us at (888) 689-5264 to speak to one of our Licensing Representatives*.*  Many trade associations have discount programs with BMI.  Contact your association to see if you qualify for a discount.

If you have any questions, you can find information on BMI at the Better Business Bureau's web site:  www.us.bbb.org/music.   You may also email us at business@bmi.com**.**


Sincerely,

BMI Licensing Sales

Enclosures: MPA, Related Info, BRE
60964989 / Premise State: UT

---



# NOTICE REGARDING UTAH MUSIC LICENSING PRACTICES ACT

Under an Act of the State of Utah relating to performing rights societies, Broadcast Music, Inc. (BMI) is recognized as a performing rights society that licenses the public performance of non-dramatic musical works on behalf of copyright owners pursuant to the United States Copyright Law.

As the proprietor of a business in the State of Utah where music is publicly performed, you are required to obtain authorization from the copyright owners of that music in order for your performances to be legal. BMI represents more than 900,000 songwriters, composers and music publishers ("affiliates") and more than 14 Million musical works. For a single annual fee, a BMI Music Performance Agreement will authorize you to legally perform at your place of business all of the musical works in the BMI repertoire created and owned by our affiliates, and you will avoid the necessity of having to contact each one individually to obtain permission.

In connection with our offering you a Music Performance Agreement, please be advised of the following:

## THE BMI MUSIC PERFORMANCE AGREEMENT

- The BMI Music Performance Agreement is the contract that describes the rates and terms of royalties required to be paid by you to BMI for authorization to perform the music which we license.
- The schedule of rates can be found within the Music Performance Agreement under the heading <u>License Fee Schedule</u>.
- The Music Performance Agreement, including the schedule of rates and terms of royalties, which BMI has offered you, is the same agreement BMI offers throughout the United States for your class and category of music use. Please read the Agreement carefully and call us at the toll-free number which appears on the enclosed letter if you have any questions. BMI complies with federal law and orders of courts having appropriate jurisdiction regarding the rates and terms of royalties and the circumstances under which licenses for rights of public performance are offered to any proprietor.

## ACCESS TO AFFILIATE AND REPERTOIRE LIST

Using a PC and a modem, you can electronically access the most current list of the affiliates we represent and the works in our repertoire which are licensed under your Music Performance Agreement. You should log onto the Internet and access the Repertoire Section of the bmi.com domain on the World Wide Web. Our URL address is **http://www.bmi.com.** Access to the Internet can be obtained through many commercial on-line services, as well as from specialized Internet access providers, often for the cost of a local telephone call. If you have questions about any song title or affiliate listing that you locate on our Internet domain, please call (800) 800-9313 for assistance.

In addition to on-line access, a list of works in the BMI repertoire as of the last printing also is available in book form or on CD-ROM. To obtain a copy in either of those forms, please remit your check or money order in the indicated amount payable to BMI at the address below, with a letter specifying which you desire. The cost is as follows (prices include shipping and handling):

(a) Printed list, approximately 17-20 volumes, $1,200
(b) CD-ROM version, 1 disk, $25

If you do not have the equipment to electronically access BMI's affiliate list, we will give you the opportunity to review the most currently available printed list of our affiliates. A refundable security deposit of $10 is required for the book. Please send your check or money order for $10 to the address below, with a letter indicating that you would like the affiliate book sent to you for review. We will not deposit your check unless you fail to return the book to us within 10 business days. Upon BMI's receipt of the book, your check or money order will be returned.

For the most current information about any affiliate or work listed in print or on CD-ROM, you should access our Internet domain or call (800) 800-9313.

**BROADCAST MUSIC, INC.**
Attn: Marketing/Fulfillment
10 Music Square East
Nashville, Tennessee 37203

Utah
LL-17/03-31

Case 3:21-cv-00136   Document 1-1   Filed 02/22/21   Page 3 of 7 PageID #: 20



# Music License for Amusement / Theme Parks

1. **DEFINITIONS**
"**Live Music and Entertainment Costs**" (sometimes referred to as "Entertainment Costs") shall mean all direct and indirect expenditures paid by LICENSEE, or on LICENSEE's behalf, for all entertainment utilizing live music in connection with LICENSEE's activities at the premises or off the premises in connection with public relations. The term "Entertainment Costs" shall not include normal stage props and equipment unless the entity or person rendering or presenting entertainment services specifically requires specialized stage props and equipment. If any regularly or seasonally employed staff member of LICENSEE performs as part of an act containing live music entertainment in addition to performing other duties, that part of employees base wages (inclusive of overtime, if any) which equals the proportion of his or her time spent performing live music and entertainment services shall be included in Entertainment Costs. The term "Entertainment Costs" shall include the value of any accommodations or services (including without limitation, room and board) which are made available to any entity or person rendering or presenting entertainment activities as part of the consideration for such entertainment services. For purposes of this Agreement, the value of such accommodations or services shall be deemed to be one-half (1/2) of the prevailing rate charged to guests for similar accommodations or services at the facility where the person or entity is being accommodated and/or served.

2. **BMI GRANT**
BMI hereby grants to LICENSEE a non-exclusive license to cause and permit at the licensed premises the public performance of all musical works of which BMI shall have the right to grant public performance licenses during the Term hereof. Said license shall be restricted to performances of music in the manner described herein and is granted in consideration of the payment of the license fees as set forth herein and is subject to all of the terms and conditions hereof. This license does not include:

(a) Dramatic Rights, the right to perform dramatico-musical works in whole or in substantial part, the right to present individual works in a dramatic setting or the right to use the music licensed hereunder in any other context which may constitute an exercise of the "grand rights" therein;
(b) the right to broadcast, telecast, cablecast or otherwise transmit the performances licensed hereunder to persons outside of the licensed premises;
(c) This license does not authorize performances of music by means of a coin-operated phonorecord player (jukebox); or
(d) The right to perform musical works licensed hereunder in live entertainment events with ticket prices exceeding $10.00 above the regular park admission price.

BMI reserves the right at its discretion to withdraw from the license granted hereunder any musical work as to which any legal action has been instituted or a claim made that BMI does not have the right to license the performing rights in such or that such work infringes another composition.

The license granted to LICENSEE pursuant to Paragraph 2 hereof shall extend to performances of music during the Term of this Agreement solely originating at LICENSEE's amusement or theme park. This license shall not extend to any performances originating outside of the licensed premises, except that if LICENSEE is a subscriber to a commercial subscription music service which is licensed by BMI, then only this license shall authorize performances on the licensed premises of music which is provided to LICENSEE by such subscription music service. In the event that LICENSEE performs the music licensed hereunder outside of the licensed premises for purposes of public relations for the licensed premises, this license shall extend to such other place for such purpose, whether or not such other place is licensed by BMI, as long as no direct or indirect monetary charge is imposed for such public relations performances. However, the extension of this license to such outside place shall not be interpreted to permit the exercise of any of the rights which are excluded by Paragraph 2(a) through 2(d) hereof. This license also shall not extend to any hotel or motel situated within the area of the licensed premises, whether or not such hotel is owned or operated by LICENSEE.

3. **REVIEW OF STATEMENTS AND/OR ACCOUNTINGS**
BMI shall have the right upon reasonable notice to LICENSEE, by its authorized representatives, at any time during customary business hours, to examine the books and records of account of LICENSEE as related to attendance, ticket prices of rides/attractions, number of days open and the payment of Live Music and Entertainment Costs as defined in this Agreement to such extent as may be necessary to verify the statements made or which should have been made hereunder or under prior agreement with BMI. BMI's right to examine the books and records of account of LICENSEE shall be limited to three (3) contract years prior to the date BMI forwards written notification of its intent to conduct such examination. BMI shall consider all data and information coming to its attention as the result of any such examination as confidential.

4. **LATE PAYMENT AND SERVICE CHARGES**
BMI may impose a late payment charge of 1% per month from the date any payment is due hereunder on any payment that is received by BMI more than one month after the due date.

5. **INDEMNITY BY BMI**
BMI agrees to indemnify, save harmless and defend LICENSEE, its officers and employees, from and against any and all claims, demands or suits that may be made or brought against them or any of them with respect to the performance of any material licensed under this Agreement. Such indemnity shall be limited to works which are licensed by BMI at the time of LICENSEE's performances. BMI will, upon request, advise LICENSEE whether particular musical works are available for performance as part of BMI's repertoire. LICENSEE agrees to give BMI immediate notice of any such claim, demand or suit, to deliver to BMI any papers pertaining thereto and to cooperate with BMI with respect thereto, and BMI shall have full charge of the defense of any such claim, demand or suit.

6. **TERMINATION OF AGREEMENT BY LICENSEE**
If, during the Term hereof, LICENSEE shall permanently cease to operate the premises, whether by reason of sale or lease thereof, or otherwise, this Agreement and LICENSEE's obligation to BMI shall thereupon terminate; provided, however, that LICENSEE shall, within ten (10) days thereafter, give written notice of such termination to BMI, setting forth the effective date thereof and the name of the new owner or operator of the premises, as the case may be, and that LICENSEE shall pay to BMI all fees due hereunder until said effective date.

### 7. BREACH OR DEFAULT/WAIVER

Upon any breach or default of the terms and conditions of this Agreement, BMI shall have the right to cancel this Agreement, but any such cancellation shall only become effective if such breach or default continues thirty (30) days after the date of BMI's written notice to LICENSEE thereof. The right to cancel shall be in addition to any and all other remedies which BMI may have. No waiver by BMI of full performance of this Agreement by LICENSEE in any one or more instances shall be deemed a waiver of the right to require full and complete performance of this Agreement thereafter or of the right to cancel this Agreement in accordance with the terms of this Paragraph.

### 8. OFFER OF COMPARABLE AGREEMENT

In the event that BMI, at any time during the Term hereof, shall, for the same class and category as that of LICENSEE, issue licenses granting rights similar to those in this Agreement on a more favorable basis, BMI shall, for the balance of the Term, offer LICENSEE a comparable agreement.

### 9. ARBITRATION

All disputes of any kind, nature or description arising in connection with the terms and conditions of this Agreement shall be submitted to the American Arbitration Association in the City, County and State of New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows: Each of the parties shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one party, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon a third arbitrator, then either party may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on the parties and judgment may be, but need not be, entered in any court having jurisdiction. Such award shall include the fixing of the costs, expenses and attorneys' fees of arbitration, which shall be borne by the unsuccessful party.

### 10. FEES

(a) In consideration of the license granted herein, LICENSEE agrees to pay to BMI for each calendar year of this Agreement, an estimated annual fee in advance on account of the actual fee. Such estimated fee shall then be subject to adjustment in accordance with Paragraph 11 hereof and the resulting actual fee shall be determined in the following manner. LICENSEE shall pay the annual fee on the License Fee Schedule which is:

**(i) Where the Amusement/Theme Park has a general admission charge paid for entry**, a sum equal to its General Admission Fee calculated from Schedule A and the Entertainment Costs Fee calculated from Schedule C for the applicable year; or

**(ii) Where the Amusement/Theme Park has *NO* general admission charge paid for entry**, a sum equal to its No General Admission Fee calculated from Schedule B and the Entertainment Costs Fee calculated from Schedule C for the applicable year.

(b) In no event, however, shall the annual fee for any calendar year be less than the minimum fee for the applicable year indicated in Subparagraph 13(d).

(c) The fee amount (or a monthly proration thereof if this Agreement begins other than in January) shall be payable in full no later than thirty (30) days after execution of this Agreement. The estimated annual fee for the second and subsequent calendar years, which shall be LICENSEE's actual fee for the previous calendar year, shall be due and payable as follows: one half (1/2) on or before July 1, and the balance on or before October 1. Said estimated fees may be subject to adjustment pursuant to Paragraph 11 of this Agreement.

(d) For all years subsequent to 2019, the annual license fee rate shall be an adjustment of the 2019 rate based upon the percentage increase or decrease in the United States Consumer Price Index (National, All Items) between October 2018 and October of the year preceding each anniversary date of this Agreement, rounded to the nearest cent. BMI will advise LICENSEE in writing of the amount of each annual license rate.

### 11. REPORTING

For the second and subsequent calendar years, no later then sixty (60) days after the licensed premises are closed to the public for the season (or no later than March 1 of the following year if the licensed premises are open all year or during the Christmas - New Year's holiday period), LICENSEE shall submit a report (on a form made available by BMI), certified by an officer or by the auditor of LICENSEE, indicating the total attendance at the licensed premises during the previous year (for parks with general admission), or the ticket prices of rides/attractions, and the number of rides and attractions and the number of days open (for parks with no general admission), and LICENSEE's Entertainment Costs for the previous year.

(a) If the actual fee is less than the estimated fee already paid to BMI for such calendar year, BMI agrees to credit the difference to the account of LICENSEE and, if such difference shall occur during the last year of the Term, BMI agrees to return same promptly.

(b) If the actual fee is greater than the estimated fee already paid by LICENSEE to BMI for such calendar year, LICENSEE shall pay BMI the difference between the actual and estimated license fee within thirty (30) days of LICENSEE's receipt of the adjusted statement of license fees sent by BMI.

(c) In the event that LICENSEE fails to timely submit to BMI an annual report required by this Paragraph 11, LICENSEE hereby appoints, authorizes and directs BMI, at BMI's option, to assess a reasonable estimated license fee for such year. BMI shall give written notice to LICENSEE of the license fee so calculated by BMI. LICENSEE shall have thirty (30) days after the mailing of such written notice by BMI to submit the required report. If BMI does not receive from LICENSEE the required report after such notice period has expired, BMI and LICENSEE agree that BMI's estimated fee shall then be established as the actual fee for the year unreported by LICENSEE. BMI and LICENSEE further agree that such established actual fee shall also become the basis for the estimated fee for the following year. LICENSEE agrees to waive its right to file its report for any calendar year in which BMI's estimated fee becomes the actual fee.

If Paragraph 6 of this Agreement shall become applicable, the fee due BMI by LICENSEE through the effective date of termination shall be determined by attendance or ride and ticket data and Entertainment Costs reported to BMI for the full or partial calendar year up to the date that LICENSEE shall cease to operate the premises, or the minimum fee for the applicable year indicated on the License Fee Schedule, whichever is greater.

### 12. NOTICES

Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed duly given when sent by ordinary first-class U.S. mail (unless it is stated elsewhere in this Agreement that a notice is to be sent by certified mail) to the party for whom it is intended, at its indicated mailing address hereinabove stated, or any other address which either party hereto may from time to time designate for such purpose, and when such notice is so mailed, it shall be deemed given upon the mailing thereof. Any such notice sent to BMI shall be to the attention of the Licensing Department. Any such notice sent to LICENSEE shall be to the attention of the person signing this Agreement on behalf of LICENSEE or such other person as LICENSEE may advise BMI in writing.

## 13. FEE SCHEDULE

LICENSEE warrants and represents that, during the full calendar year immediately preceding the beginning date of this Agreement:

**a. FOR AMUSEMENT PARKS WITH A GENERAL ADMISSION CHARGE** (if no general admission charge-use Paragraph 13(b)).

| | | | |
|---|---|---|---|
| its total attendance (rounded down to the last full thousand) was | *(Total Attendance)* | 1 | 300,000 |
| and divided by 1,000 equals | *(Attendance Divided by 1,000)* | 2 | 300 |
| and when multiplied by the Attendance Fee Rate from Schedule A below for the first (full or partial) calendar year of the Term, which is | *(See Schedule A Rate)* | 3 | $6.46 |
| results in an estimated annual General Admission Fee of | *(Multiply Box 2 x Box 3)* | 4 | $1,938.00 |

**b. FOR AMUSEMENT PARKS WITH *NO* GENERAL ADMISSION CHARGE**

| | | | |
|---|---|---|---|
| the total number of rides and attractions available at LICENSEE's facility is | | 5 | 0 |
| the highest stated ticket price for the highest priced ride/attraction is | | 6 | $0.00 |
| using Schedule B, the applicable fee (based on the figures in boxes 5 & 6) is | *(See Schedule B Rate)* | 7 | $0.00 |
| the total number of days that the park is open is | | 8 | 0 |
| enter Seasonal Adjustment Factor (obtain from Schedule B) | *(Seasonal Adjustment Factor)* | 9 | 0 |
| results in an estimated annual No General Admission Fee of | *(Multiply Box 7 x Box 9)* | 10 | $0.00 |

**c. FOR ENTERTAINMENT COSTS FEE** (both General Admission and No General Admission Amusement Parks).

| | | | |
|---|---|---|---|
| its Live Music and Entertainment Costs were | *(Yearly Entertainment Costs)* | 11 | $50,000.00 |
| and the Entertainment Costs Fee Rate from Schedule C below for the first (full or partial) calendar year of the Term, which is | *(See Schedule C Rate)* | 12 | 1.31% |
| results in an estimated annual Entertainment Costs Fee of | *(Multiply Box 11 x Box 12)* | 13 | $436.67 |

**d.** (i) If LICENSEE did not operate during any part of the year preceding the Term hereof, LICENSEE shall make a good-faith estimate of its attendance (¶13a) or the number of days open (¶13b), and Entertainment Costs (¶13c) for the first full calendar year of the Term and indicate such estimates in Sub-paragraphs 13 (a) or (b) and (c) above…

**(ii) THE TOTAL ESTIMATED ANNUAL FEE FOR THE FIRST CALENDAR YEAR OF THIS AGREEMENT IS** ……………… *(Add Box 4 or Box 10 to Box 13)* **14** $1,728.67

*Not Less Than Minimum Fee*

(iii) If Agreement begins other than in January, this rate will represent a prorated fee calculated as follows: No. of months in first calendar year of Term divided by 12, times Fee in Paragraph 13 (d)(ii) = Fee Due of …………… $1,728.67 *(Prorated Fee Due)*

| Total Annual Minimum Fee (All Schedules) |
|---|
| 2019 |
| $341.00 |

**e.** LICENSEE warrants and represents that, to the extent necessary, LICENSEE shall obtain a separate BMI Musical Attractions license to cover LICENSEE's live music entertainment events with ticket prices exceeding $10.00 above the regular park admission price.

**SCHEDULE A.** Amusement Park with a General Admission

| Year | 2019 |
|---|---|
| Attendance Fee Rate | $6.46 |

**SCHEDULE B.** Amusement Park with No Admission

**Highest Ticket Price Per Ride**

| No. of Rides | $0.0 to $1.41 | $1.42 to $2.55 | $2.56 to $3.62 | $3.63 to $4.7 | $4.71 to $5.77 | $5.78 to $999999.99 |
|---|---|---|---|---|---|---|
| | | | Unadjusted Fees | | | |
| 1-3 | $111.00 | $145.00 | $220.00 | $300.00 | $377.00 | $456.00 |
| 4-7 | $145.00 | $220.00 | $300.00 | $377.00 | $456.00 | $528.00 |
| 8-11 | $220.00 | $300.00 | $377.00 | $456.00 | $528.00 | $607.00 |
| 12-16 | $300.00 | $377.00 | $456.00 | $528.00 | $607.00 | $683.00 |
| 17-Over | $377.00 | $456.00 | $528.00 | $607.00 | $683.00 | $799.00 |

**Seasonal Adjustment Factor**
1) If park is open less than 90 days, adjustment factor is 1.
2) If park is open 90 days or more, but less than 180 days, adjustment factor is 2.
3) If park is open 180 days or more, but less than 270 days, adjustment factor is 3.
4) If park is open 270 days or more, adjustment factor is 3.5.

**SCHEDULE C.** Live Music and Entertainment Costs Fee*

| Year | 2019 |
|---|---|
| Entertainment Costs Fee | 1.31% |

\* Excludes live music with ticket price exceeding $10 above the regular park admission price. See Paragraph 13(e) above.

**14. MISCELLANEOUS**
This Agreement constitutes the entire understanding between the parties, shall not be binding until signed by both parties, and cannot be waived or added to or modified orally, and no waiver, addition or modification shall be valid unless in writing and signed by the parties. The rights of LICENSEE shall not be assignable. This Agreement, its validity, construction and effect, shall be governed by the laws of the State of New York. The fact that any provisions herein are found by a court of competent jurisdiction to be void or unenforceable shall not affect the validity or enforceability of any other provisions.

**15. TERM**
The Term of this Agreement shall begin on the first day of _____May, 2019_____ and end on the last day of ____December, 2019____ and shall continue thereafter unless canceled by either party as of the end of the initial Term or any subsequent one (1) year Term, upon thirty (30) days advance written notice to the other party.

# AGREEMENT

THIS AGREEMENT made and entered into on *(Date will be entered by BMI upon execution)*_____
between BROADCAST MUSIC, INC., a corporation with principal offices at 7 World Trade Center, 250 Greenwich Street, New York, N.Y. 10007-0030 herein referred to as BMI, *and the entity described below and herein referred to as LICENSEE*.

| **LEGAL NAME** | **LICENSED PREMISES** |
|---|---|
| *(Name of Corporation, Partnership, or Individual Owner)* | 382 S Evermore Lane |
| | *(Street Address)* |
| **TRADE NAME** | Pleasant Grove    UT    84062 |
| Evermore Park | *(City)    (State)    (Zip)* |
| *(Doing business under the name of)* | (385) 207-5080 |
| | *(Telephone Number)    (Fax Number)* |
| **PLEASE COMPLETE LEGAL INFORMATION BELOW** | Owner                     Manager |
| | *(Contact Name)    (Title)* |
| Legal Structure_____ | |
| *(Individual, Corporation, LLC, LLP, Partnership, Government Entity or Other)* | *(Email Address)    (Web Address)* |
| State of Incorporation_____ Federal Tax ID No. _____ | **MAILING ADDRESS** |
| | *(if different from Licensed Premises)* |
| Partners' Names *(If Partnership)* | 382 S Evermore Lane |
| 1. _____ | *(Street Address)* |
| 2. _____ | Pleasant Grove    UT    84062 |
| 3. _____ | *(City)    (State)    (Zip)* |
| **IF LEGAL STRUCTURE IS A GOVERNMENT ENTITY, PLEASE INDICATE BELOW** | *(Telephone Number)    (Fax Number)* |
| Local, State, or Federal _____ | Owner                     Manager |
| Municipality Name _____ | *(Contact Name)    (Title)* |
| *(City/State)* | *(Email Address – if different from above)* |

| **TO BE COMPLETED BY LICENSEE** | **FOR ADMINISTRATIVE USE ONLY TO BE COMPLETED BY BMI** BROADCAST MUSIC INC. |
|---|---|
| By signing this Agreement you represent that you have the authority to bind LICENSEE and that you have read, understood and agree to all of the terms and conditions herein. *(SIGN HERE – PLEASE INCLUDE PAYMENT)* | |
| Signature | |
| Print Name / Title | |
| Signatory Email Address* *(if different from above)* | **FOR BMI USE ONLY** | 44 | **LI-2017/JUL** |
| *In order to receive a copy of your executed Agreement, please provide the email address of the Signatory. | 60964989 | 60964989 | | **EFFECTIVE: January 2017** |
| | **ACCOUNT NO.** | **COID** | | |

**PLEASE RETURN THIS <u>ENTIRE</u> SIGNED LICENSE AGREEMENT TO:**
**BMI, 10 MUSIC SQUARE E., NASHVILLE, TN  37203**